THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DOMINICK MUÑOZ,**

      **Plaintiff,**

    v.                                                                                                 Civ. No. 23-638 MIS/JFR

**CHRIS DURAN, FNU GRUTALEY,
CRYSTAL SANDOVAL, ALBERT
MARTINEZ, PHILESTINA YAZZY,
LUIS MARTINEZ, FNU GARCIA,
R. JARAMILLO, and JOHN DOES 1-6,**

      **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the *Motion for Summary Judgment* filed by Defendants Cris Duran, First Name Unknown ("FNU") Grutaley, Crystal Sandoval, Albert Martinez, Philestina Yazzy, Luis Martinez, FNU Garcia, Rose Jaramillo, and John Does 1-6 (collectively, "Defendants") on February 18, 2025. Doc. 48. The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, concludes that Defendants' *Motion for Summary Judgment* (Doc. 48) is well taken, and recommends that it be **GRANTED.**

The Court further recommends **DENYING AS MOOT** Plaintiff's four outstanding motions: (1) "*Request For Admission And Duty To Disclose Witness Statement*," filed December 26, 2024 (Doc. 43); (2) "*Motion For Default Judgment unter* [sic] *Rule 56*" against Defendant Duran, filed January 17, 2025 (Doc. 46); (3) "*Plaintiffs* [sic] *Motion/Request For production of*

---

[1] By an Order of Reference filed October 17, 2024, the Honorable Margaret I. Strickland referred this matter to the undersigned to conduct hearings as warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. Doc. 37.

*documents etc…* [sic]," filed June 2, 2025 (Doc. 71); and (4) *Motion for Protective Order/Injunctive Relief*, filed July 2, 2025 (Doc. 75).

## I.   RELEVANT PROCEDURAL BACKGROUND

Plaintiff Dominick Muñoz, also known as Destiny Sparkles,[2] proceeding pro se and in forma pauperis, brought this action on July 31, 2023. Doc. 1. Plaintiff filed a First Amended Complaint on August 7, 2023. Doc. 2. On July 12, 2024, with leave of the Court (Doc. 13), Plaintiff filed a Second Amended Complaint (hereafter, "Complaint"), which now serves as the operative pleading. Doc. 18.

Defendants filed their Answer on September 24, 2024. Doc. 30. On October 17, 2024, the Court entered an Order to File *Martinez* Report. Doc. 36. Pursuant to the Court's order extending Defendants' deadline (Doc. 42), Defendants filed their *Martinez* Report and *Motion for Summary Judgment* as one filing on February 18, 2025. Doc. 48. On February 19, 2025, Plaintiff filed an Appendix/Supplement with "evidence and proof of exhaustion of administrative remidies [sic] . . . ."[3] Doc. 50 at 1.

Plaintiff's Response to the *Martinez* Report was due April 18, 2025. Doc. 47. Because Plaintiff failed to file a timely Response, the Court issued an Order to Show Cause on April 29, 2025. Doc. 54. However, on May 5, 2025, the Court received Plaintiff's Response to the

---

[2] Plaintiff identifies as a transgender woman. Docs. 31, 44. Out of respect for Plaintiff's gender identity, the Court will use Plaintiff's preferred pronouns herein, unless a quote states otherwise.

[3] The Court recognizes that Plaintiff has also submitted the following documents as evidence: an article titled "4 Cos file lawsuit alleging dangerous conditions at N.M. prison" (Doc. 18 at 10-11); a declaration by inmate Nick Gonzales (Doc. 18 at 12-13); four declarations "from Different people/witnesses including [Plaintiff]" (Doc. 20); a witness statement from inmate Richard Maestas (Doc. 43); an undated 'Transgender Statement of Preference Form' (Doc. 55 at 44); select pages of NMCD Policies 150800 and 150801 (titled 'Transgender, Intersex, and/or Gender Non-Conforming') (Doc. 55 at 45-50); another declaration from Mr. Gonzales (Doc. 60); and a "debit memo" that Plaintiff timely mailed her Response to the *Martinez* Report (Doc. 72). Additionally, Plaintiff's second Response to the *Martinez* Report included select pages of NMCD Policies 032200 and 032201 (titled 'Code of Ethics') (Doc. 61 at 28-34), which the Court will not consider since it received Plaintiff's first Response (Doc. 55).

*Martinez* Report. Doc. 55. Accordingly, the Court extended Defendants' Reply deadline. Doc. 56. On May 7, 2025, Plaintiff responded to the Order to Show Cause and in doing so, requested an extension of time to respond to the *Martinez* Report. Doc. 57. The following day, the Court quashed the Order to Show Cause and did not address the request, since it was mooted by the Court receiving Plaintiff's Response. Doc. 58. Yet, without leave of the Court, Plaintiff filed a second Response on May 13, 2025. Doc. 61. Accordingly, the Court will only consider the first Response (Doc. 55).[4] Defendants replied on May 20, 2025. Doc. 64.

## II. RELEVANT FACTUAL BACKGROUND

At all times relevant to Plaintiff's Complaint, Plaintiff was incarcerated in the Reception and Diagnostic Center ("RDC") of the Central New Mexico Correctional Facility ("CNMCF"). Doc. 18 at 5-8. Upon being transferred and arriving to the RDC on July 11, 2023, Defendant Classification Officer Cris Duran processed Plaintiff's intake, during which she gathered routine information about Plaintiff's judgment and sentence, updated Plaintiff's enemy list, and conducted the Prison Rape Elimination Act questionnaire. *See id.* at 6; Doc. 48-13 at 1 ¶ 4.

The RDC only has two general housing units: 2A and 2B. Doc. 18 at 6. There is segregated housing, but per New Mexico Corrections Department ("NMCD") policy, inmates are not placed in any long-term segregated housing for protective custody reasons and are only placed in restrictive housing if all other viable alternatives have been exhausted. Doc. 48-7 at 1 (NMCD Policy 141100). Policy also requires all protective custody requests to be specific; generalized statements are insufficient. *Id.* at 2-3 (NMCD Policy 141101); *see also* Doc. 48-13 at 2 ¶¶ 6-7. Because Defendant Duran's intake assessment of Plaintiff "appeared standard and

---

[4] Out of an abundance of caution, the Court compared the two responses. There was no substantive difference in Plaintiff's arguments. *Compare* Doc. 55, *with* Doc. 61. All differences had no substantive impact on the outcome of this matter because they were either conclusory statements, stating legal principles that the court must nonetheless apply, or incorrect descriptions of law.

3

alerted no signs that would require additional screening or qualify Plaintiff for Protective Custody," Doc. 48-13 at 1 ¶ 5, Plaintiff was placed in 2A-R-105[5] after intake.  Doc. 18 at 6.

      Plaintiff asked the 2A Rover to "keep eyes" on her for potential issues resulting from Plaintiff's sexuality and charges of criminal sexual contact with minors.  *See id.*; Docs. 48-3 at 47, 48-4 (listing charges).  The following day, Plaintiff reported feeling unsafe in the assigned pod to Defendant Sergeant FNU Grutaley, who informed Plaintiff that because she was incarcerated for violating parole, she could only be assigned to 2A or 2B.  Doc. 18 at 6; *accord* Doc. 48-7 at 1 (NMCD Policy 141100).  Plaintiff returned to her pod, where she allegedly proceeded to "put in inmate requests and emergence [sic] Grievances stating that my life is in Danger and to move me before something happens to me."  Doc. 18 at 6; *contra* Doc. 48-7 at 2-3 (NMCD Policy 141101 (denying protective custody for requests based solely on "broad, generalized statements," such as "I am in danger.")).

      After the shift change on July 23, 2023, Plaintiff informed the on-duty 2A-2B Rover that she felt endangered and in fear for her life, but the Rover allegedly did not respond.  Doc. 18 at 6.  Later that evening, Plaintiff was twice attacked.  *See id.*  Plaintiff first claims that she was attacked by multiple inmates, was yelling for help, and was "knocked out."  *Id.*  Despite claiming she was "knocked out," Plaintiff allegedly attempted to alert the control officer.  *Id.*; *see also* Doc. 55 at 4 ("I screamed, yealed [sic], even got away and wiggled and hit door on the pod under controle [sic] trying to get controle [sic] officers [sic] attention but failed.").  Unsuccessful,

---

[5] Uncontroverted evidence from the *Martinez* Report lists Plaintiff's cell as 2A-B105.  *See, e.g.*, Doc. 48-3 at 2, 4-5, 7, 9, 14-15, 23, 25, 31-34.

4

Plaintiff returned to her cell, where she was assaulted by four inmates at approximately 7:21 p.m.[6]  *See* Docs. 18 at 6, 48-3 at 2-5, 27-30.

Plaintiff lay on the floor, bleeding and unable to move, until approximately 9:00 p.m., when Correctional Officer ("CO") Joesiha Haynes discovered Plaintiff while conducting the routine hourly headcount.  *See* Docs. 18 at 6, 48-3 at 2-5, 16.  A few minutes later, CO Haynes "activated a response," and multiple COs responded to the scene.  *See* Docs. 18 at 6, 48-3 at 2, 4.  In accordance with standard protocol to ensure staff safety, CO Gilbert Herrera placed a shield over Plaintiff while CO Haynes rolled Plaintiff onto her back and handcuffed her.  *See* Docs. 18 at 7, 48 at 7, 48-3 at 16, 22.

Plaintiff was then placed on a gurney and taken to the infirmary for further evaluation by Licensed Practical Nurse ("LPN") Shandell Garcia.  *See* Docs. 18 at 7, 48-3 at 2-3.  LPN Garcia contacted the on-call provider, Dolce Russo, who advised that Plaintiff be taken to an alternative medical treatment facility.  Doc. 48-3 at 3.  Ambulance services were then contacted, which subsequently transported Plaintiff to the University of New Mexico Hospital.  *Id*.  While waiting for the ambulance to arrive, Plaintiff reported that she was attacked by the four inmates "for unknown reasons."  *Id.*

In sum, Plaintiff brings this action against multiple employees of the RDC at CNMCF, all in their individual and official capacities for their alleged failure (either directly or indirectly, through the theory of respondeat superior) to separate (i.e., put Plaintiff into protective custody), supervise, intervene, protect, and provide timely medical assistance.  *See generally* Doc. 18; *see*

---

[6] These four inmates were taken to the infirmary, where they were questioned.  Doc. 48-3 at 3.  Only one of these four inmates, Justin Latasa, was willing to answer any questions.  *Id.*  Mr. Latasa explained that he assaulted Plaintiff due to her charges and an earlier altercation between the two.  *Id.* at 3, 59.  Prison authorities notified the proper authorities, including State Police and Duty Officer Captain Jose Santiago.  *Id.* at 3.  Because one of the other three preparators, Cody Ruiz, alleged that CO Veionka Mendoza directed him to commit the assault, authorities also referred the incident to the Office of Professional Standards ("OPS").  *See id.* at 57.  OPS ultimately found Mr. Ruiz's allegation against CO Mendoza to be "unfounded," meaning the allegation was deemed untrue.  Doc. 48-15 at 2 ¶ 7.

5

*also id.* at 7. Plaintiff further alleges that when Defendants "finally responded," they used excessive force. *Id.* at 8. Consequently, Plaintiff seeks (1) a protective order, and (2) $300,000 for "physical and emotional harm, and lack of concern for [her] safety." *Id.* at 9.

### III. LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only material factual disputes preclude the entry of summary judgment. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "Instead, the movant only bears the initial burden of 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325) (quotation within quotation marks omitted).

6

Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(c). Rule 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed [to] support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c); *see also* D.N.M.LR-Civ. 56.1(b). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). Likewise, "only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief." *West v. Norton*, 376 F. Supp. 2d 1105, 1118 (D.N.M. 2004) (citing *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997) (citing *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986)). The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv.*, 391 U.S.

253, 289 (1968)).  If there is no genuine issue of material fact in dispute, then a court must determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).

### B.  Plaintiff's Pro Se Status and Use of the *Martinez* Report

In addition to the standards applicable to all motions for summary judgment, the Court notes that Plaintiff's pleadings and responses were prepared without the assistance of counsel.  Although pro se plaintiffs must "follow the same rules of procedure that govern other litigants," *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993), it has long been the rule that pro se pleadings are construed with a greater degree of liberality than those of a trained attorney.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3; *Hill v. Corrs. Corp. of Am.*, 14 F. Supp. 2d 1235, 1237-38 (D. Kan. 1998).  This rule requires the Court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  *Hall*, 935 F.2d at 1110.  However, it is inappropriate for a court to assume the role of an advocate and read into a complaint facts or legal theories that are simply not present there.  *See id.*; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").  The Court cannot assume facts or make connections on Plaintiff's behalf because "a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."  *Hall*, 935 F.2d at 1110.  Likewise, Plaintiff's pro se

status, in and of itself, does not prevent this court from granting summary judgment. *See, e.g.*, *Drake*, 927 F.2d at 1161.

Additionally, "[w]hen the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall*, 935 F.2d at 1109 (first citing *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978); and then citing *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987)). Likewise, because pro se litigants may be unfamiliar with the requirements to sustain a claim, they should be provided an opportunity to controvert the facts set out in the *Martinez* report. *Id.*

## IV. ANALYSIS

### A. Failure to Exhaust

Proper exhaustion of administrative procedures is required before an inmate may bring legal claims in court. *See* 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act of 1995 ("PLRA") makes clear that before suing over prison conditions, a prisoner must exhaust "such administrative remedies as are available . . . ." *Id.* Exhaustion is mandatory and non-discretionary; a court cannot consider unexhausted claims. *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007)). This exhaustion requirement applies not only to lawsuits brought under 42 U.S.C. § 1983, but "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Proper exhaustion requires strict compliance with the applicable procedural rules, including time limits and the completion of *all* steps. *See Woodford*, 548 U.S. at 90-91; *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002) ("An

inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust . . . .").

Here, NMCD's policies impart the applicable administrative grievance process, straightforwardly describing the three levels of review that an inmate must complete before filing suit. *See* Doc. 48-10 at 1-8 (NMCD Policy 150500), 9-16 (NMCD Policy 150501). To fully and properly exhaust NMCD's grievance procedures, inmates must: (1) initiate an informal complaint within five working days of the alleged underlying incident (NMCD Policy 150501 A(1)(a)); (2) initiate a formal grievance either (a) within five working days of receiving an unsatisfactory response to the informal complaint (NMCD Policy 150501 A(3)) or (b) after ten working days if no response is received (NMCD Policy 150501 A(4)); (3) submit an appeal to the Office of the Secretary of Corrections within five working days of receiving the Warden's (or his designee's) decision (NMCD Policy 150501 D(1)) on the Grievance Officer's report and recommendation (NMCD Policy 150501 B(5)) on the formal grievance; and (4) receive a written final decision on the grievance from the Secretary, Director of Adult Prisons, or designee (NMCD Policy 150501 D(6)-(7)). *Id.* at 9-16 (NMCD Policy 150501); *see also id.* at 1-8 (NMCD Policy 150500). NMCD policy requires that all inmates are advised of these procedures and provided a copy upon arriving to the RDC, *id.* at 3-4 (NMCD Policy 150500 A(2)-(4)), which Plaintiff does not dispute having received.[7] Additionally, blank copies of the necessary

---

[7] Even if Plaintiff were to later dispute having received the policy, Plaintiff filed two formal grievances before filing this suit, and evidently knew the relevant grievance process. *See generally* Doc. 48-11 at 1-12. First, while housed at Otero County Prison Facility, Plaintiff filed an informal complaint on August 9, 2021, requesting reimbursement for property confiscated in April 2021. *Id.* at 4. Since this informal complaint was not submitted within five working days of the incident, it was denied as untimely. *Id.* at 5; *accord* Doc. 48-10 at 9 (NMCD Policy 150501 A(1)(a)). Plaintiff submitted a formal grievance on October 7, 2021, Doc. 48-11 at 1-3, which was similarly denied for its untimely submission. *Id.* at 1; *accord* Doc. 48-10 at 9 (NMCD Policy 150501 A(3)).

Second, Plaintiff filed a formal grievance on December 17, 2021, Doc. 48-11 at 9-12, stating that she did not receive a timely response to her informal complaint allegedly filed on December 2, 2021. *Id.* at 10; *accord* Doc. 48-10 at 10 (NMCD Policy 150501 A(4)). At issue was property lost during Plaintiff's transfer from the Penitentiary of New

10

forms are attached to NMCD Policy 150501, *id.* at 17-20, and are readily available in accessible locations. *Id.* at 9 (NMCD Policy 150501 A(3)(a)).

Exhaustion of these administrative procedures is required even if they "appear to be futile at providing the kind of remedy sought . . . ." *Jernigan*, 304 F.3d at 1032. Accordingly, the exhaustion doctrine is an affirmative defense, and defendants therefore bear the burden of asserting and proving the plaintiff's failure to exhaust. *Jones*, 549 U.S. at 211-12. A defendant raising an affirmative defense in a motion for summary judgment "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

Defendants have met their initial burden of demonstrating that no genuine dispute of material fact exists regarding their affirmative defense of failure to exhaust. *See Jones*, 549 U.S. at 211-12; *Hutchinson*, 105 F.3d at 564. In fact, the record shows that Plaintiff not only failed to exhaust, but that she entirely failed to properly initiate the grievance process (i.e., by filing an informal complaint about protective custody or the attacks).

Accordingly, Plaintiff must now "demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564. On the one hand, Plaintiff points out that Defendants' *Martinez* Report did not include one informal complaint that Plaintiff initiated *after* she filed suit, wherein Plaintiff requested inmate account statements for her application to proceed in forma pauperis. Doc. 55 at 3 (citing Doc. 7). This point serves two purposes. *See id.* First, Plaintiff attempts to undermine the *Martinez* Report's authenticity. *See id.* However, Defendants' *Martinez* Report only included Plaintiff's *grievance* history, and specifically those

---

Mexico ("PNM") Minimum Restrictive Unit ("MRU") to the PNM South Facility on November 3, 2021. *See* Docs. 48-2 at 1, 48-11 at 11. The formal grievance was denied on December 21, 2021, since there was no record of the informal complaint cited and even if there were, it was not timely initiated within five working days of the underlying incident. *See* Doc. 48-11 at 9; *accord* Doc. 48-10 at 9 (NMCD Policy 150501 A(1)(a)).

grievances filed before Plaintiff filed suit and/or those pertaining to Plaintiff's safety. *See* Docs. 48 at 10-11, 64 at 10; *see also* Doc. 48-11. Second, Plaintiff argues that her wholly unrelated, post-suit informal complaint demonstrates that she "attempted to exhaust[.]"[8] Doc. 55 at 3. But attempting to exhaust does not equate to actual exhaustion, and the PLRA demands the latter. 42 U.S.C. § 1997e(a). NMCD's grievance process requires timely initiation of each step, tied to the specific underlying incident, *see* Doc. 48-10 at 1-16 (NMCD Policies 150500 and 150501), and it is unclear how the omission or inclusion of an unrelated informal complaint changes or has any conceivable bearing on fulfilling the well-established exhaustion requirement as it applies to the claims at issue. *Compare* Doc. 7, *with* Doc. 18.

On the other hand, Plaintiff also makes the (impliedly conflicting) argument that she did, in fact, exhaust her claims, and submitted questionable[9] documents as "evidence." *See* Doc. 50

---

[8] Oddly, despite citing to subsequent conduct, Plaintiff does not cite to the grievance she initiated on November 21, 2023, and fully exhausted on February 5, 2023. *See generally* Doc. 48-11 at 13-17. Perhaps this discrepancy is because such an argument would inherently undermine Plaintiff's alternative argument that the Court should find the grievance process to have been "unavailable," and thereby excuse her noncompliance. *See infra* Section IV.B.

[9] Defendants' Reply raised the following relevant issues, in addition to their arguments for summary judgment: (1) Plaintiff's unfounded allegations of misconduct and requests for court intervention in her Response (Doc. 57) to the Order to Show Cause (Doc. 54); (2) Plaintiff's submission of five allegedly falsified Inmate Request Forms, all pre-dating the attacks (Doc. 50 at 2-6); (3) Plaintiff's alleged forgery of four CNMCF employees' signatures (three of whom have been identified) (Doc. 55 at 2-6); and (4) Plaintiff's alleged mischaracterization of a Disciplinary Officer's Investigation Report by submitting only one page of it (Doc. 50 at 7). Doc. 64 at 1-9; *see also* Doc. 69 (additional sworn affidavit subsequently filed with leave of the Court (Doc. 66)). In support of their allegations, Defendants included a full copy of the document Plaintiff allegedly mischaracterized, sworn affidavits of the individuals whose signatures were allegedly forged, and sworn affidavits of the individuals most likely to have received the Inmate Request Form with an unidentifiable signature. Docs. 64-1 through 64-7, 69. Importantly, Defendants' counterevidence shows that NMCD has no record of the five Inmate Request Forms Plaintiff submitted to the Court. *See* Docs. 64, 64-1 through 64-7, 69. Overall, Defendants' explanation, analysis, and evidence of this alleged misconduct is highly compelling. *See id.* Yet, despite having made multiple subsequent filings (*see, e.g.*, Docs. 67-68, 71-75), Plaintiff has failed to address these allegations.

The Court feels compelled to address the severity of this alleged misconduct, especially the allegation that Plaintiff submitted five falsified documents, and in doing so, allegedly forged four signatures. Both accusations, if true, point to potentially criminal conduct and significantly obstruct justice. While the (alleged) unsupported claims of Defendants' misconduct and mischaracterization of the Disciplinary Officer's Investigation Report are less egregious, that does not make such conduct, if true, any more permissible. *See Stine v. Fetterhoff*, No. 07-cv-02203, 2009 WL 2848848, at *3 (D. Colo. Aug. 31, 2009) ("Plaintiff's unconscionable and slanderous accusations . . . evidences a lack of respect for the Court, Defendants, and the judicial process.").

at 1 ("I Destiny Muñoz am submitting Evidence and proof of exhaustion of administration remidies [sic] and [Defendants'] knowledge [of the danger Plaintiff faced]."). Specifically, Plaintiff provided five 'Inmate Request Forms,' all predating the attacks on July 23, 2023 (*id.* at 2-6), as well as one out-of-context page of a Disciplinary Officer's Investigation Report from August 10, 2023 (Doc. 50 at 7). However, these documents are inadequate to show exhaustion, as they do not demonstrate proper compliance with NMCD's policies. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some

---

The Court has broad authority stemming from its inherent powers and multiple rules of the Federal Rules of Civil Procedure to impose sanctions sua sponte. Fed. R. Civ. P. 11(c)(1)(B), 46(b); *Auto-Owners Ins. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 857-58 (10th Cir. 2018); *see also Anchondo v. Anderson, Crenshaw & Assocs., LLC*, No. 08-202, 2011 WL 4549279, at *5 (D.N.M. Sept. 29, 2011) ("It is appropriate to proceed under the court's inherent powers [where] the sanctions available under the Federal Rules of Civil Procedure are not adequate."). Such sanctions include, but are not limited to, monetary sanctions, excluding the (allegedly) falsified evidence, and dismissal with prejudice. Although pro se litigants are held to a less stringent standard than a licensed attorney, they must nevertheless follow the same rules of procedure governing other litigants. *Green*, 969 F.2d at 917. Likewise, pro se plaintiffs are not immune from sanctions, including dismissal. *See, e.g.*, *Stine*, 2009 WL 2848848 (imposing dismissal as a sanction where pro se inmate made unsupported allegations and filed false and forged documents); *Boulware v. Overmyer*, No. CV 15-300, 2017 WL 6039745 (W.D. Pa. Dec. 6, 2017) (imposing dismissal with prejudice as a sanction against pro se plaintiff, who was incarcerated at the time of filing suit, for filing forged documents as "evidence" he exhausted the prison's administrative grievance process); *Uribe v. McKesson*, No. 08-cv-01285, 2011 WL 3925077 (E.D. Cal. Sept. 7, 2011) (dismissing case as a sanction against a pro se inmate for filing a false declaration with a forged signature in support of his motion).

At this time, the Court will not impose sanctions because Defendants have not filed a separate motion requesting sanctions, nor has the Court sua sponte required Plaintiff to address these allegations in an order to show cause. *See Stine*, 2009 WL 2848848, at *18 (granting dismissal as sanction pursuant to motion made under Fed. R. Civ. P. 41(b) and order to show cause); Fed. R. Civ. P. 11 (c)(2) ("A motion for sanctions must be made separately from any other motion . . . ."), (3) ("On its own, the court may order . . . [a] party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). Nevertheless, the Court notes that Plaintiff's failure to respond to these allegations adds further evidence of her culpability. In addition to the inherent understanding that "[s]ubmitting an altered document to a court is deceitful," Plaintiff's failure to "retract[] that manipulation when presented with evidence of its falsehood is doubly so." *King v. Fleming*, 899 F.3d 1140, 1153 (10th Cir. 2018) (finding failure to retract manipulated documents sufficient reason to find plaintiff's conduct culpable, hence "bolstering its decision to apply a dismissal sanction."). As an inmate, Plaintiff is already familiar with the disadvantages and discomforts of prison. Yet, Plaintiff is apparently unconcerned by claims of wrongdoing that are widely known to constitute multiple crimes (e.g., defrauding a court (18 U.S.C. § 401), fraud (18 U.S.C. § 1028), forgery (NMSA 1978 § 30-16-10), identity theft (18 U.S.C. § 1028A), and perjury (18 U.S.C. §§ 1621, 1623)). *See Stine*, 2009 WL 2848848, at *18 ("I note that submission of a false document to the Court and suborning perjury are criminal acts."). Thus, the Court does not hesitate in warning Plaintiff that federal judges may refer suspected criminal conduct to the appropriate authorities, including the Department of Justice, for investigation. *See Martinez v. Winner*, 771 F.2d 424, 435 (10th Cir. 1985) ("A judge is not only entitled but also has a duty to take all lawful measures reasonably necessary to prevent the occurrence of a crime in his courtroom," including "a duty to notify the proper authorities . . . .").

orderly structure on the course of its proceedings."). The 'Inmate Request Form[s]' that Plaintiff submitted as "evidence," are entirely different from the 'Inmate Informal Complaint' form that NMCD policy explicitly states must be filed within five working days of the underlying incident in order to properly begin the grievance process. *See* Doc. 48-10 at (NMCD Policy 150501 A(1)(a) ("The inmate shall first file an informal complaint using the Inmate Informal Complaint form (CD-150501.3) . . . ."); *cf. id.* at 2 (NMCD Policy 150500, Definition E: "Any complaint or written complaint that does not utilize the approved grievance form, may initiate an investigation and response, but will not be deemed a grievance within the meaning of this policy."); *compare* Doc. 50 at 2-7, *with* Doc. 48-10 at 1-16 (NMCD policies 150500 and 150501), *and* Doc. 48-10 at 20 (CD-150501.3 (blank copy of the 'Inmate Informal Complaint' form)).

Thus, for the reasons set forth above, the Court concludes that Plaintiff has not shown a genuine issue of material fact regarding her failure to exhaust, *see Hutchinson*, 105 F.3d at 564, and Defendants are therefore entitled to summary judgment under the PLRA. *See* 42 U.S.C. § 1997e(a); Fed. R. Civ. P. 56.

B. **Waiving the Exhaustion Requirement**

Since there is no dispute that Plaintiff failed to exhaust her administrative remedies, a question remains as to whether those remedies were available. Likewise, Plaintiff's alternative argument is that the Court should waive the exhaustion requirement because "[D]efendants and department ignores issues and due to the severity of this case." Doc. 55 at 7. The Supreme Court has established that courts may not excuse an inmate's failure to exhaust available administrative remedies, even where there are "special circumstances," like Plaintiff alleges. *Ross v. Blake*, 578 U.S. 632, 638-41 (2016). Be that as it may, inmates need not exhaust unavailable remedies. *Id.* at 642. Administrative remedies are deemed unavailable if the

procedure: (1) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;"[10] (2) is "so opaque that it becomes, practically speaking, incapable of use;" or (3) is thwarted by prison administrators "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 633, 643-44.

Of these three exceptions, only the first and third are potentially relevant to Plaintiff's argument that "[D]efendants and department ignores issues . . . ." Doc. 55 at 7; *see Ross*, 578 U.S. at 633, 643-44. However, Plaintiff has failed to meet her burden in demonstrating that either of those two exceptions apply here. *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him . . . .").

First, Plaintiff has not shown how NMCD's administrative process "operates as a simple dead end." *Ross*, 578 U.S. at 633, 643. Plaintiff's non-specific and conclusory assertion that her complaints and grievances go ignored, which the three answered grievances attached to the *Martinez* Report (Doc. 48-11) categorically refute, falls short of establishing that she had no potential of obtaining *any* relief under the administrative grievance process. *See id.*; *Lynn v. Willnauer*, No. 23-3111, 2024 WL 5040627, at *4 (10th Cir. Dec. 9, 2024) (finding "non-specific assertions" of discarded or ignored grievances "fall far short of showing" unavailability when answered grievances refuted the claim); *Schlenkert v. Davis*, No. 08-cv-02660, 2009 WL 793097, at *1 (D. Colo. Mar. 20, 2009) ("[Plaintiff's] speculation that exhaustion would be futile does not

---

[10] The Supreme Court further clarified the "dead end" exception by way of example: "Suppose . . . that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then 'capable of use' for the pertinent purpose." *Ross*, 578 U.S. at 643. Accordingly, the Supreme Court concluded that "[w]hen the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

excuse the required exhaustion process. He has not shown affirmatively that exhausting BOP remedies would be useless.").

Second, Plaintiff has not made specific allegations or provided evidence that any prison employee "thwart[ed her] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Again, generalized speculation or subjective fear, absent evidence that administrative procedures were objectively rendered unavailable, is insufficient. *See id.*; *May v. Segovia*, 929 F.3d 1223, 1235 (10th Cir. 2019) (requiring plaintiff to satisfy both a subjective and objective prong, beyond mere allegations (i.e., requiring evidence) that prison officials' thwarting rendered administrative remedies unavailable). Plaintiff falls short in specifically alleging or demonstrating with evidence that she was somehow thwarted from taking advantage of the prison's grievance process.

The Court therefore concludes that Plaintiff has failed to show that administrative remedies were unavailable. *See Ross*, 578 U.S. at 643-44; *accord* 42 U.S.C. § 1997e(a). Accordingly, Defendants are entitled to summary judgment. *See* Fed. R. Civ. P. 56.

## V. RECOMMENDATION

For all the foregoing reasons, the Court finds that the record demonstrates no genuine dispute of material fact that Plaintiff failed to exhaust available administrative remedies. Therefore, Plaintiff's claims are barred as a matter of law. *See* 42 U.S.C. § 1997e(a). Based on these findings, the Court recommends that:

1. Defendants' *Motion for Summary Judgment* (Doc. 48) be **GRANTED**;

2. Plaintiff's "*Request For Admission And Duty To Disclose Witness Statement*" (Doc. 43) be **DENIED AS MOOT**;

3. Plaintiff's "*Motion For Default Judgment unter* [sic] *Rule 56*" (Doc. 46) be **DENIED AS MOOT**;

4. Plaintiff's "*Motion/Request For production of documents etc…* [sic]" (Doc. 71) be **DENIED AS MOOT**;

5. Plaintiff's *Motion for Protective Order/Injunctive Relief* (Doc. 75) be **DENIED AS MOOT**; and

6. Plaintiff's Complaint (Doc. 18) be **DISMISSED WITH PREJUDICE**.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**